THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RANDY CASTILLO,<br><br>Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CASE NO. C17-0119-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 22) and Plaintiff's motion to strike (Dkt. No. 43). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Defendant's motion for summary judgment (Dkt. No. 22) and DENIES Defendant's motion to strike (Dkt. No. 43) for the reasons explained herein.

## I. BACKGROUND

On March 10, 2013, Plaintiff Randy Castillo suffered a stroke while incarcerated at the Federal Detention Center (the "FDC") in SeaTac, Washington. (Dkt. No. 1 at 2–3.) Prior to the stroke, Mr. Castillo complained of a headache and dizziness to correctional staff, who initially counseled him to rest and hydrate. (*Id.*) After staff observed that Mr. Castillo was slurring his speech, he was taken to the hospital where he was diagnosed with a left vertebral artery dissection. (Dkt. No. 22 at 8.) Seven days after he was admitted to the hospital, a chart note

indicates that Mr. Castillo was "[a]wake and alert," and that his speech was "fluent." (Dkt. No. 25-3 at 48.) On April 1, 2013, Mr. Castillo was discharged from the hospital and transferred to Highline Medical Center for rehabilitation. (*Id.*) On June 1, 2013, after two months at Highline, Mr. Castillo was transferred to an assisted living facility called Crestwood. (Dkt. No. 22 at 9.)

At Crestwood, Mr. Castillo continued to recover from the stroke and began to live more independently. (*See* Dkt. Nos. 25-3 at 3, 4, 9; 36-2 at 9–10, 12–13.) Although mostly confined to a wheelchair, Mr. Castillo managed his own medications, arranged and attended medical appointments, made healthcare decisions, paid bills, and went shopping. (Dkt. Nos. 36-2 at 12; 25-3 at 40–41, 91, 94.) Mr. Castillo did not drive, but would arrange for travel through a public service by calling and scheduling a ride. (Dkt. No. 25-3 at 3.) Mr. Castillo regularly spoke with family and friends on the phone, and would sometimes visit and stay with them overnight. (*See* Dkt. No. 26-2 at 8, 14.) He would regularly go to a casino to meet friends, watch sports, and play blackjack. (Dkt. No. 25-3.) Victor Bernarte, a staff member at Crestwood responsible for assisting Mr. Castillo when needed, confirmed that Mr. Castillo lived independently at Crestwood, managed his healthcare, handled financial obligations, and pursued leisure activities. (*See* Dkt. No. 36-2 at 6–7, 9–10.) Mr. Bernarte also testified that he regularly spoke with Mr. Castillo and never had any difficulty understanding him. (*Id.* at 4–5.)[1]

---

[1] The United States did not attach the relevant excerpts of Mr. Bernarte's deposition to its summary judgment motion, and Mr. Castillo therefore moved to strike all references to his testimony. (Dkt. Nos. 31 at 7, 43.) Before filing a reply, the United States provided the deposition excerpts by praecipe. (Dkt. No. 36.) The Court will consider the deposition testimony on summary judgment because the Government complied with Local Civil Rule 7(m) and the Court perceives no prejudice to Mr. Castillo in doing so. (*See* Dkt. No. 31 at 7.) Mr. Castillo could have responded to Mr. Bernarte's testimony regardless of whether his deposition was attached to the Government's motion. It is clear from Mr. Castillo's brief, that his counsel attended Mr. Bernarte's deposition and was aware of his testimony. (*See generally* Dkt. No. 31.) After the briefing was closed, Mr. Castillo filed a notice of intent to strike material from the Government's reply brief. (Dkt. No. 42) (citing Local Civil Rule 7(g)). However, Mr. Castillo's motion to strike was not timely, because he did not file it within five days of the Government's reply. *See* W.D. Wash. Local Civ. R. 7(g). Accordingly, the Court DENIES Mr. Castillo's motion to strike. (Dkt. Nos. 31, 43.)

Three to four months after his stroke, Mr. Castillo began to consider filing a lawsuit against the United States for the allegedly insufficient medical care he received from FDC staff prior to his stroke. (Dkt. Nos. 1, 25-3 at 38.) Mr. Castillo first discussed the idea with family, and "within a year or so" began calling around to try to find an attorney. (Dkt. No. 25-3 at 39–40.) Every attorney Mr. Castillo spoke with declined to represent him, although some referred him to other attorneys. (*Id.*) Mr. Castillo continued searching for an attorney until, at some point, he stopped to focus on his recovery. (*Id.*) Mr. Castillo testified that he stopped looking for a lawyer because he "wanted to communicate and talk better and be able to walk in the office . . . to actually see and talk to someone." (*Id.*) He is unsure about how long he searched for an attorney or when he stopped. (*Id.* at 42.) Mr. Castillo further states that "[he] really can't say when [he] started calling lawyers, and [he] really can't say how many lawyers [he] called, and [he] really couldn't say what [he] said to those lawyers about what [he] was trying to do." (Dkt. No. 34 at 2.)

On April 14, 2016, Mr. Castillo filed an administrative notice of claim with the Bureau of Prisons. (Dkt. No. 32-1 at 1.) By letter dated August 12, 2016, the Bureau of Prisons denied Mr. Castillo's complaint because he failed to file a notice of claim within two years of his injury as required by 28 U.S.C. § 2401(b). (Dkt. No. 32-2 at 1.) On January 26, 2017, Mr. Castillo filed this lawsuit. (*See* Dkt. No. 1.) His complaint acknowledges that his claim to the Bureau of Prisons was untimely, and invokes the doctrine of equitable tolling due to his "mental incapacity" within the statute of limitations. (*Id.* at 1–3.) The United States moves for summary judgment, arguing that equitable tolling should not apply. (Dkt. No. 22.)

## II. DISCUSSION

### A. Legal Standard

The Court will grant a motion for summary judgment when the moving party demonstrates that there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party need not dispel all doubt as

to all facts—rather, they must only demonstrate that there are "no *genuine* issue[s] of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is one that affects the outcome of the case. *Id.* A dispute of fact is genuine if there is sufficient evidence for a reasonable juror to find for the non-moving party. *Id.* The Court must credit the non-moving party's evidence and draw justifiable inferences in their favor. *Id.* at 255. But if the non-moving party's assertions are "blatantly contradicted by the record," the Court need not adopt that version of events for purposes of ruling on the motion. *Scott v. Harris*, 127 U.S. 372, 380 (2007). Assertions in conclusory, self-serving affidavits are insufficient, standing alone, to create a genuine issue of material fact. *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007). "Missing facts" in the record will not be presumed. *Lujan v. Nat'l Wildlife Found.*, 497 U.S. 871, 888–89 (1990).

### B. The Federal Tort Claims Act

The United States has partially waived sovereign immunity for tort claims brought by those injured by its employees. Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1). A claim under the FTCA "shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). A medical malpractice claim accrues when a plaintiff becomes aware of both an injury and the injury's cause. *Hensley v. United States*, 531 F.3d 1052, 1056 (9th Cir. 2008). The claim accrues regardless of whether the plaintiff understands that they have a legal right to seek redress for that injury. *United States v. Kubrick*, 444 U.S. 111, 122 (1979).

Thus, Mr. Castillo's claim against the United States accrued when he first learned that he had suffered a stroke, regardless of when he first considered legal action. Mr. Castillo admitted that when he was discharged from the hospital on April 1, 2013, he knew he had suffered a stroke and was injured as a result. (Dkt. No. 25-5 at 3.) Mr. Castillo had two years from that date—until April 1, 2015—to file the necessary notice of claim to preserve his legal right to bring a tort action against the United States. 28 U.S.C. § 2401(b). It is undisputed that he failed

to do so. (Dkt. Nos. 22 at 13, 31 at 6.) The Bureau of Prisons received Mr. Castillo's notice of claim on April 14, 2016—more than a year past the deadline. (Dkt. No. 32-1 at 1.) Therefore, unless Mr. Castillo can show that the statute of limitations should be tolled, his claim is time-barred. 28 U.S.C. § 2401(b).[2]

### C. Equitable Tolling

The doctrine of equitable tolling may save a time-barred FTCA claim where extraordinary circumstances prevented the plaintiff from filing in a timely manner. *United States v. Wong,* 135 S. Ct. 1625, 1633 (2015). Federal courts apply the doctrine of equitable tolling "sparingly." *Irwin v. Dep't of Veterans Affairs*, 490 U.S. 89, 96 (1990). A plaintiff who seeks relief under the doctrine of equitable tolling bears the burden of establishing two things: first, that he was "pursuing his rights diligently," and second, that an "extraordinary circumstance" prevented him from filing within the statute of limitations. *Holland v. Florida*, 560 U.S. 631, 649 (2010). The "diligence prong" relates to those factors within the plaintiff's control, and equitable tolling is not appropriate when "the litigant was responsible for its *own* delay." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016). The "extraordinary circumstances prong," by contrast, relates to those factors outside the litigant's control. *Id.* A plaintiff must prove both elements to demonstrate that equitable tolling is warranted. *Id.*

#### 1. Mr. Castillo's Diligence

The undisputed facts show that Mr. Castillo was not diligent in preserving his legal rights. The Court initially notes that Mr. Castillo appears to conflate diligence in preserving his

---

[2] The same statute provides that all other "civil actions" against the United States must be filed within six years of accrual, unless the plaintiff is legally disabled at the time, in which case the relevant period is three years from when the disability ends. 28 U.S.C. § 2401(a). That provision does not apply to tort actions. *United States v. Glenn*, 231 F.2d 884, 887 (9th Cir. 1956). Mr. Castillo argues that he was legally disabled by his stroke, and that the Court should apply section 2401(a)'s "disability exclusion." (Dkt. No. 31 at 7.) Since Mr. Castillo is pursuing a tort action against the United States, his request that the Court apply section 2401(a) is without merit. *Glenn*, 231 F.2d at 887.

right to pursue legal action with diligence in securing the assistance of counsel. However, *pro se* status, by itself, does not warrant equitable tolling. *See Johnson v. United States*, 544 U.S. 295, 311 (2005) ("[W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."). Because the lack of an attorney is not alone grounds for equitable tolling, Mr. Castillo's search for an attorney, by itself, does not satisfy the diligence prong of the equitable tolling test. Even if searching for an attorney was sufficient for the Court to find that Mr. Castillo was diligent, it is undisputed that Mr. Castillo stopped his search for a lawyer within the statute of limitations. (*See* Dkt. No. 25-3 at 40, 43.) Mr. Castillo testified that he called several attorneys until at some point he stopped to focus on his recovery and "lost track of time." (Dkt. No. 25-3 at 40.)

While Mr. Castillo's efforts to obtain representation may be evidence of diligence, he fails to offer any other evidence that he took action to preserve his legal rights. (*See* Dkt. No. 34 at 3.) In fact, Mr. Castillo's own testimony establishes that searching for an attorney is the *only* step he took toward bringing legal action. (*Id.*) In his declaration, Mr. Castillo acknowledges that before hiring his current attorney, "[he] didn't even know [he] had to file a claim, or what [he] could claim, and [he] certainly didn't know what statutes of limitations applied to [his] case." (*Id.*) Mr. Castillo asserts that until he retained counsel, he was ignorant of the FTCA's notice of claim requirements. But procedural ignorance does not warrant equitable tolling. *Johnson*, 544 U.S. at 311.

Mr. Castillo's assertion that his stroke prevented him from acting diligently is similarly unsupported by the record evidence. A plaintiff's mental incapacity may be grounds for equitable tolling where the plaintiff establishes a causal link between the incapacity and his inability to comply with the statute of limitations. *See Lawrence v. Florida*, 421 F.3d 1221, 1226–27 (11th Cir. 2005). The plaintiff bears the burden of providing a factual basis for that claim, and the Court will not presume facts that are absent from the record. *Id.* at 1227; *Lujan*, 497 U.S. at 888–89. Aside from generally stating that his stroke affected his mental capacity, Mr. Castillo has not

1 pointed to evidence that creates a factual link between his mental incapacity and his inability to
2 file in a timely manner. (Dkt. No. 31 at 12.) Nor does Mr. Castillo's expert witness's general
3 assertion about the cognitive effects of a stroke create a factual link between Mr. Castillo's
4 stroke and his claimed incapacity. (Dkt. No. 33-1 at 12–13.)

In fact, the undisputed evidence suggests that Mr. Castillo had the cognitive capacity to preserve his claim. The record establishes that within five months of his stroke, Mr. Castillo was living independently and pursuing other activities and responsibilities. (*See* Dkt. No. 25-3 at 26–27, 40–41, 31.) Mr. Bernarte, who regularly interacted with Mr. Castillo and was responsible for assisting him when necessary, testified that Mr. Castillo was largely self-reliant, lived an active life, and communicated without issue. (Dkt. No. 36-2 at 4, 7–10.)

Mr. Castillo asserts in a declaration that his ability to pursue other activities is not indicative of his ability to have diligently sought counsel or file a notice of claim. However, that conclusory and self-serving statement is not enough to create a genuine dispute of material fact. *See Nilsson*, 503 F.3d at 952. It is also contradicted by evidence exhibiting Mr. Castillo's ability to pursue other cognitively demanding life activities—such as playing blackjack or managing his finances. (Dkt. No. 34 at 2–3.) Most importantly, while Mr. Castillo was living at Crestwood, he briefly *did* work to bring his claim by attempting to find an attorney, but stopped of his own volition. (Dkt. No. 25-3 at 42.) And during that period, he was unable to retain counsel not because of his mental incapacity, but because the attorneys he contacted declined to represent him. (*Id.* at 40.) Mr. Castillo's brother submitted a declaration attesting that Mr. Castillo was prevented from retaining counsel because his speech was impaired by the stroke. (Dkt. No. 35 at 2.) However, given Mr. Castillo's testimony that he voluntarily stopped searching for a lawyer, his brother's contradictory testimony alone cannot create a genuine dispute of material fact. (Dkt. No. 25-3 at 40.)

In sum, the Court finds that there are no genuine issues of material fact regarding Mr. Castillo's diligence in preserving his legal rights. Because Mr. Castillo was substantially

responsible for his untimely claim, he has failed to demonstrate the requisite diligence to warrant the extraordinary remedy of equitable tolling. *Menominee Indian Tribe of Wis.*, 136 S. Ct. at 756.

### 2. Extraordinary Circumstances

Mr. Castillo has likewise failed to demonstrate that his stroke was a sufficiently extraordinary circumstance to warrant equitable tolling. *Id.* The record clearly establishes that Mr. Castillo engaged in other activities and lived independently within a few months of his stroke. (*See, e.g.*, Dkt. No. 25-3 at 40–41.) Other than the self-serving assertions in his declaration, Mr. Castillo fails to explain why he was capable of managing his healthcare and finances, arranging transportation, shopping for food and clothing, and playing blackjack at a casino, all while laboring under a mental incapacity sufficient to render him incapable of filing the required notice of claim within the statute of limitations. (*See* Dkt. No. 25-3 at 23, 26–27, 29, 40–41, 94.) Just as Mr. Castillo has not demonstrated that his stroke prevented him from being diligent, he has failed to show how it was a sufficiently extraordinary circumstance to warrant equitable tolling.

Mr. Castillo also asserts that he still suffers from the same physical and mental handicaps that prevented him from filing the required notice of claim within the statute of limitations. (Dkt. No. 31 at 1–2.) Mr. Castillo's brother and expert witness likewise assert that Mr. Castillo "is still . . . disabled physically and mentally." (Dkt. Nos. 35 at 2, 331-1 at 13.) But as the United States observes in its reply, Mr. Castillo eventually retained an attorney, filed a notice of claim, and brought this lawsuit. (Dkt. No. 37 at 11.) Mr. Castillo does not explain why, if his cognitive deficits prevented him from filing a timely notice of claim, they did not also prevent him from filing after the statute of limitations expired, or from retaining his present attorney. Even crediting Mr. Castillo's testimony that his stroke adversely affected his mental and physical capabilities, and continues to do so, the Court finds that Mr. Castillo has failed to put forth sufficient evidence to establish that the stroke's effects were sufficiently debilitating to prevent him from filing the required notice of claim within the statute of limitations.

### III. CONCLUSION

The United States has met its burden to show that summary judgment is appropriate. There are no genuine issues of material fact regarding the untimeliness of Mr. Castillo's notice of claim, nor regarding his argument that the statute of limitations should be equitably tolled. Because Mr. Castillo has failed to put forth sufficient evidence to warrant equitable tolling, his complaint is time-barred and must be dismissed.

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 22) is GRANTED. The Plaintiff's complaint is DISMISSED with prejudice. The Court also DENIES Plaintiff's motion to strike (Dkt. No. 43).

DATED this 30th day of October 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE